UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:16-00192 |
| | ) | Judge Sharp |
| CHRISTOPHER CARDENAS | ) | |

**MEMORANDUM**

Pending before the Court is Defendant Christopher Cardenas's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Docket No. 31), to which the Government has responded in opposition (Docket No. 36), and Defendant has replied (Docket No. 37). For the reasons that follow, Defendant's Motion will be denied.

**I. Background**

In roughly chronological order, the relevant facts are as follows:

On October 14, 2010, Defendant was convicted in the Davidson County Criminal Court for the sale of heroin, a Schedule I controlled substance. He was sentenced to a nine-year term of imprisonment in the Tennessee Department of Corrections ("TDOC") to be served on Community Corrections.

Defendant was again arrested on July 19, 2014, this time on misdemeanor charges of criminal impersonation and driving without a licence. Three weeks later, in a case styled United States v. Cardenas, No.14-00122 (M.D. Tenn. 2014), Defendant was indicted by a federal grand jury for illegal re-entry by an aggravated felon in violation of 8 U.S.C. §§ 1326(a) and (b)(2). A warrant was issued for Defendant's arrest on August 6, 2014, the same day the indictment was returned, and the United States Marshals Service received the warrant the following day.

1

On December 20, 2014, Immigration and Customs Enforcement ("ICE") filed a detainer against Defendant with the Davidson County Sheriff's Office, asking that it be notified a least 30 days prior to the release of Defendant. Two days later, Defendant pled guilty to the state court misdemeanor charge of driving without a licence, was sentenced to time-served, and the criminal impersonation charge was dismissed.

On February 12, 2015, Defendant returned to the Davidson County Criminal Court on a probation violation charge. During the proceedings, his previously imposed 9-year sentence was reinstated (with credit for time served) and he was sentenced to the TDOC.

Approximately two weeks later, on February 25, 2015, the Government sought and received a writ of habeas corpus ad prosequendum on the illegal re-entry case. Defendant had an initial appearance in that case on March 3, 2015, and trial was set for May 5, 2015.

A week before the scheduled trial date, the Government moved for a continuance because the prosecutor handling the case had a two-week vacation scheduled and the parties were negotiating a plea agreement. Defendant had no objection to the continuance and was directed to file a waiver of speedy trial, which he did on May 5, 2015. Trial was reset for July 21, 2015.

The week before the reset trial date, counsel for Defendant filed a motion to be relieved of representation. After a hearing on July 30, 2014, counsel's request was granted and the trial was continued to September 1, 2015. The Government then moved to continue that trial date on the grounds that, while new counsel had represented as late as August 25, 2015 that Defendant intended to plead guilty, Defendant wanted to go to trial. The Government requested three to four weeks to prepare for trial.

On August 31, 2015, Defendant moved to dismiss the case for lack of jurisdiction because
2

the 120-day deadline in the Interstate Agreement on Detainers ("IAD") had passed.[1] The Court heard oral arguments on the Motion on September 1, 2015, ordered additional briefing, and continued the trial indefinitely. Because the Motion was not ruled upon within 30-days of the completion of briefing and more than 70-days of non-excludable time had elapsed since Defendant's initial appearance, he filed a Motion to Dismiss Under the Speedy Trial Act.

On March 25, 2016, the Court entered an Order granting Defendant's request for dismissal on speedy trial grounds, dismissing the Indictment without prejudice, and denying as moot Defendant's request for dismissal under the IAD. In an accompanying Memorandum, the Court observed that, while "[a]n inadvertent violation of the Speedy Trial Act" had occurred, and that "some fault for getting Defendant to trial in a timely manner must be borne by all, the ultimate responsibility must be shouldered by the Court because dismissal is required due to its failure to issue a timely ruling[.]" (Case No. 3:14-00122, Slip op. at 1 & 6). "[A]s a partial explanation," but "not offered as an excuse," the Court noted that the judges in this District were laboring under an extremely heavy caseload while understaffed, and that "mistakes occur" and "things fall off the radar, even in ideal conditions." (Id. at 9).

Defendant filed a Notice of Appeal and was ordered by the United States Court of Appeals for the Sixth Circuit to show cause as to why the appeal should not be dismissed because this Court's Order was not final or appealable. After a request for a supplemental round of briefing, Defendant voluntarily moved to dismiss the appeal, which the Sixth Circuit granted.

Defendant was re-indicted on September 21, 2016, under the same charges as those

---

[1] Defendant claims that he filed this motion because the Government withdrew its original plea offer after it had been accepted by him.

contained in the original Indictment. By his calculations the present Indictment was returned one year, six months and 18 days since his first appearance on the original indictment. He again seeks dismissal on the grounds that the IAD has been violated.

## II. Discussion

The IAD "is a compact entered into by 48 states, the United States, and the District of Columbia to establish procedures for resolution of one State's outstanding charges against a prisoner of another State." New York v. Hill, 528 U.S. 110, 111 (2000). The Agreement "is designed 'to encourage the expeditious and orderly disposition of . . . charges'" and "prescribes procedures by which a member State may obtain for trial a prisoner incarcerated in another member jurisdiction and by which the prisoner may demand the speedy disposition of certain charges pending against him in another jurisdiction." United States v. Mauro, 436 U.S. 340, 343 (1978) (citation omitted). The United States is a party to the compact, id., as is the State of Tennessee, Tenn. Code Ann. § 40-31-101.

Defendant presents a two-fold argument under the IAD. First, he argues this Court is without jurisdiction because he was not tried within the time limits of the IAD. Second, he asserts that the government violated the anti-shuttling provision of that statute after the initial Indictment was dismissed.

Defendant's arguments, of course, presuppose that the IAD applies in his situation. It appears that it does not.

The IAD applies to a prisoner "who is serving a term of imprisonment in any party State," and, more specifically, a prisoner who "has entered upon a term of imprisonment in a penal or correctional institution of a party State[.]" 18 U.S.C. App. 2, § 2, Art. III & IV(a). Recognizing the

4

"sharp disagreement among courts as to whether the IAD is triggered when a detainer is lodged against a convicted and sentenced prisoner who is being held in temporary custody pending a transfer to his permanent incarceration," the Sixth Circuit has "conclude[d] that 'correctional facility' is correctly understood as meaning the state facility to which the Defendant is ultimately assigned, not the local facility in which he sits awaiting transfer to that facility." United States v. Taylor, 173 F.3d 538, 541 (6th Cir. 1999); see also, United States v. Glasgow, 790 F.2d 446, 449 (6th Cir. 1985) (per curiam) (finding that the time limits under the IAD were inapplicable where defendant, who was sentenced to a term of imprisonment in the state prison, was being held in a county jail because he "never actually began serving his state term of imprisonment in a state correctional facility.")

So it appears to be here.[2] Defendant did not enter a state correctional facility before being transferred to federal custody on March 3, 2015. Rather, his sentence of nine years was reinstated on February 12, 2015 for a violation of his Community Corrections conditions and he was held at the Davidson County Criminal Justice Center, a local jail. The Government obtained custody of Defendant on March 3, 2015 from the jail, not a state prison.

It is true that the Tennessee Supreme Court, in State v. Springer, 406 S.W.3d 526 (Tenn. 2013), reached a conclusion directly opposite from the one in Taylor. More specifically, the Tennessee Supreme Court held "that a 'term of imprisonment' begins when a prisoner has been sentenced and confined, even when the prisoner is serving the sentence in a temporary detention facility or a county jail." Id. at 538. In that court's opinion,

---

[2] The Court uses the word "appears" because Defendant claims that the Davidson County Jail may well have been his last stop and that he may not have been transferred to a state prison to serve his term. Even if true, his IAD claim fails on the merits as explained below.

> [t]he plain meaning of 'term of imprisonment' indicates the time period begins when the prisoner is imprisoned after being sentenced. It does not refer to the place of the incarceration. . . . [A] sentence in Tennessee can be served in the Department of Correction, a local jail, or a workhouse.

Id. at 538.

Whether Taylor or Springer got it right is not for this Court to determine. This Court is bound by the law of the Sixth Circuit, notwithstanding Defendant's assertions that (1) Taylor and Glasgow "are extremely old cases,"; (2) Glasgow "has never been cited again by any Sixth Circuit panel in a published decision since Taylor"; (3) Taylor relied on "pure dicta" from Glasgow; (4) both cases are "[un]sound" and did not "cite[] to any record to support their factual conclusions nor to any particulars of state law"; and (5) "[t]he Glasgow case is odd[.]" (Docket No. 37 at 11, 12, 17).

Nevertheless, and assuming the IAD applies even though Defendant remained housed at the local jail, his IAD claims fail.

Defendant first argues the Court is without jurisdiction because he was not tried within the period prescribed by Article IV of the IAD. So far as relevant, that Article provides:

> (c) In respect of any proceeding made possible by this article, trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.
>
>             \*                          \*                        \*
>
> (e) If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

18 U.S.C. app. 2, § 4.

Here, the record reflects that Defendant first appeared on March 3, 2015 and, with a 120 day

6

deadline, the trial needed to commence by July 1, 2015. While the original trial date of May 5, 2015 would have complied with the requirement, the trial was continued at the Government's request to July 21, 2015, and, after counsel withdrew, continued to September 1, 2015, which was 182 days after Defendant first appeared in this Court. As a consequence, Defendant insists that this case must be dismissed and that the dismissal must be with prejudice. Prior to reaching the merits of that argument, however, the Court finds it necessary to address a couple of arguments raised by the Government.

The Government argues that Defendant's request for dismissal is moot. This argument has some superficial appeal in the sense that the instant case began on September 21, 2016, with the return of the second Indictment, after Defendant voluntarily dismissed his appeal, yet his arguments are grounded on what occurred in relation to the first Indictment. That said, the case was dismissed without prejudice for a violation of the Speedy Trial Act and the Sixth Circuit has made clear that "[a] dismissal without prejudice is not a 'final order'. . . that can be immediately appealed" and "[a] criminal case does not become final until the defendant is sentenced." United States v. Moss, 217 F.3d 426, 430 n.1 (6th Cir. 2000) (citation omitted). Indeed, "appeal of the ultimate conviction on a subsequent indictment is the only method by which a defendant may seek . . . review of such an order." United States v. Gross, 432 F. App'x 490, 493 (6th Cir. 2011). Thus, the only way to challenge the Government's alleged violation of the IAD after the initial case was dismissed without prejudice was through this action.[3] Besides, "'[t]he test for mootness is whether the relief sought

---

[3] In fact, the parties apparently agreed to have the Court determine the issue in the present case. In his Motion to Dismiss the appeal, counsel for Defendant wrote:

> Rather than address the issue of whether denial of a motion to dismiss based on a violation of the IAD is an appealable final order or not, the parties have agreed that Mr. Cardenas can renew his IAD argument before the district court on this new indictment; that he is free to

7

would, if granted, make a difference to the legal interests of the parties,'" Bowman v. Corr. Corp. of Am., 350 F.3d 537, 550 (6th Cir. 2003) (citation omitted) and dismissal with prejudice would certainly make a difference to the legal interests of Defendant.

The Government also argues that there was no violation because Defendant conceded to a continuance when the Government first requested it, and signed a waiver of his right to speedy trial. Assuming the Government presented good cause within the meaning of Article IV(c), that was presented by way of a written motion and not in open court with Defendant or counsel present. While the trial court need not "always comply literally with every procedural requirement enunciated in Article IV(c) when the defendant requests a continuance, . . . literal compliance is clearly required for continuances requested by the prosecution." United States v. Crozier, 259 F.3d 503, 515 (6th Cir. 2001). Literal compliance was not achieved in this case.

Turning to the merits, the record is clear that Defendant was not tried within the 120 day period of the IAD, but it does not follow that dismissal with prejudice is warranted. This is because "in a case in which the United States is a receiving State . . . any order of a court dismissing an indictment, information, or complaint may be dismissed with or without prejudice." 18 U.S.C. App. 2 § 9(1)).

Recognizing the existence of the exception, Defendant ask the Court not to apply it. He argues that § 9 "was not part of the original Interstate Agreement passed in 1970 and instead was added unilaterally by Congress in 1988" and that it "is not part of Tennessee law or any agreement

---

        argue that any challenge to his initial indictment should be continued over as if the new indictment were a continuation of the initial indictment; and that the voluntary dismissal of this appeal should not be construed as any waiver or forfeiture of any challenge or argument that he may bring against the new indictment.

(Docket No. 34-7 at 2). The Government does not dispute those assertions.

with the United States." (Docket No. 34 at 12). All that may be true, but it has been held " that while the United States is a party to the agreement, it is not a 'party' to the constitutional compact. Therefore, while the states that are parties to the constitutional compact may not fundamentally alter or amend the compact through state legislation by reason of the Supremacy Clause, there is no such restriction on the United States." United States v. Jones, 367 Fed. App'x 482, 483 (4th Cir. 2010) (citing Bush v. Muncy, 659 F.2d 402, 410 (4th Cir. 1981)).

Congress has given this Court the power to determine whether dismissal should be with or without prejudice and, in making that decision, the Court is to "consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to dismiss; and the impact of reprosecution on the administration of the agreement on detainer and on the administration of justice." 18 U.S.C. app. 2, § 9(2). Except for the fact that the Court considered the impact of reprosecution on the administration of the Speedy Trial Act rather than on the IAD, those were the exact same factors the Court considered previously in choosing to dismiss the Indictment without prejudice.

The underlying rationale for the conclusion that dismissal without prejudice was warranted is set forth in detail in this Court's prior ruling (Case No. 3:14-00122, at *4-8), and that discussion is incorporated herein by reference. By way of summary, the Court found that (1) the charge of illegal re-entry by a felon was serious, as was the potential 20-year sentence; (2) Defendant bore at least some responsibility for the delay because he agreed to a continuance, and, even late in the process, indicated that he intended to plead guilty; and (3) the delay was not inordinate and Defendant had not shown prejudice, particularly since he would have been in TDOC's custody but-for the original indictment. Those factors apply with equal force to his IAD claim and, as a

9

consequence, dismissal without prejudice would have been warranted and would not have barred the present Indictment.

This conclusion remains even when the Court considers the impact of reprosecution on the IAD as opposed to the Speedy Trial Act. There is no evidence of a pattern of neglecting the requirements of the IAD in this district, or a showing of bad faith. United States v. Kelley, 402 F.3d 39, 42 (1st Cir. 2005) (affirming dismissal without prejudice where there was no pattern of IAD violations, but stating that it "would be a materially different case if the United States had acted willfully or if there were a pattern of such violations in this district"); United States v. Parker, 2011 WL 463277, at *3 (D. Md. Oct. 3, 2011) (citation omitted) (stating that repeated failure to honor obligation under IAD warrants dismissal with prejudice, but violations "'caused by mere error, as opposed to bad faith or a pattern of negligence'" warrant dismissal without prejudice); United States v. Small, 209 F. Supp. 2d 1114, 1123 (D. Colo. 2002) (choosing to dismiss case without prejudice where there was "no significant evidence of a pattern of neglect or intentional violation of the IAD").

As an additional ground for dismissal, Defendant argues that the anti-shuttling provision of the IAD was violated. This is because, after the Government allegedly violated Defendant's rights under both the IAD and the Speedy Trial Act, it "caus[ed] his first indictment to be dismissed and . . . had Defendant transferred back to state custody, then re-indicted him on identical charges and had him transferred again to federal custody." (Docket No. 34 at 11). He insists that "entering an order of dismissal with prejudice is the only thing this Court has jurisdiction to do." (Id.). The Court finds no basis on which to conclude the IAD was violated under these circumstances, let alone that dismissal with prejudice is warranted.

The anti-shuttling provision of the IAD is found in Article IV(e). It provides:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

18 U.S.C. App. 2, § 2, art. IV(e). "[T]he purpose of the IAD's anti-shuttling provision is to minimize the uncertainties attendant with outstanding charges which interfere with a prisoner's rehabilitation and treatment programs and to encourage the expeditious and orderly disposition of such charges." United States v. Pursley, 474 F.3d 757, 764 (10th Cir. 2007).

Defendant's assertion that the anti-shuttling provision was violated when the United States returned him to state custody after the original indictment and brought him back into federal custody after the new indictment runs counter to the plain language of the IAD. Simply put, there was no federal indictment, complaint or information pending when he was returned to state custody after the dismissal of the original Indictment. See United States v. Carnes, 41 F. Supp. 2d 719, 724 (E.D. Mich. 1999) (holding that the "Government did not violate Article IV(e) by releasing Defendant to the custody of the Michigan Department of Corrections following the dismissal of the First Superceding Indictment" because, at that time, "no federal complaint, information, or indictment was pending as required for a violation of the anti-shuttling provision").[4]

Finally, the Court notes that, as with the time limit provision of the IAD, dismissal for a violation of the anti-shuttling provision "generally warrants dismissal with prejudice," but "the Act

---

[4] In a related but underdeveloped argument, Defendant claims that the failure to provide him with notice and a hearing prior to being returned to state custody violated 18 U.S.C. App. 2, § 9(2). However, that provision relates to the return of a prisoner to state custody "prior to trial." When Defendant was returned to state custody after the dismissal of the first indictment, there were no pending federal charges and no trial to be had.

11

explicitly carves out an exception when the United States is the receiving state." United States v. Gouse, 798 F.3d 39, 43 (1st Cir. 2015). "For this exception to have any meaning, a violation from one case (where the U.S. is the receiving state) cannot automatically require the dismissal of a subsequent proceeding" because "finding otherwise would convert every dismissal without prejudice into one with prejudice; it would just be entered in subsequent litigation." Id.

### III. Conclusion

On the basis of the foregoing, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Docket No. 31) will be denied. An appropriate Order will enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE